IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

HARLEYSVILLE WORCHESTER
INSURANCE COMPANY                                                                     PLAINTIFF


VS.                                    CASE NO. 6:12-CV-6057


DIAMONDHEAD PROPERTY OWNERS
ASSOCIATION, INC; FRED ENSMINGER;
JERRY CHAMBLISS; and CYNTHIA NELSON                                              DEFENDANTS


## MEMORANDUM OPINION

Before the Court is Plaintiff Harleysville Worchester Insurance Company's Motion for Partial Summary Judgment. (ECF No. 18). This action involves an insurance policy dispute between Harleysville and Defendants Diamondhead Property Owners Association, Inc., Fred Ensminger, Jerry Chambliss, and Cynthia Nelson. Harleysville seeks reformation of the parties' insurance contract, based on the doctrine of mutual mistake, to reflect the parties' true intent. Each Defendant has responded to Harleysville's motion. (ECF No.'s 27, 29, & 31). Harleysville has replied to each Defendant. (ECF No. 33, 34, & 35). The matter is ripe for the Court's consideration. Because the undisputed facts indicate that the parties' agreement does not effectuate their intent, Harleysville's motion will be granted.

## BACKGROUND

This is a basic commercial insurance policy dispute. Harleysville issued a commercial insurance policy to Diamondhead in 2010 that did not contain an exclusion for "law enforcement coverage." Harleysville claims that both parties actually intended that the policy exclude such

coverage. Harleysville contends that the policy failed to exclude law enforcement coverage simply because of an inadvertent mistake. Diamondhead disagrees. The series of events that led to this dispute is as follows:

In June 2010, Diamondhead contacted Arkansas Best Insurance Corporation ("ABIC") to secure Commercial General Liability Coverage and a Commercial Liability Umbrella Policy for Diamondhead.[1] ABIC then contacted several insurers on Diamondhead's behalf to request proposals for that coverage. One of those insurers was Harleysville.

During the underwriting process, ABIC informed Harleysville that the policy need not include law enforcement coverage because Diamondhead already maintained a separate law enforcement policy through another insurer, Western World Insurance Company. In fact, on June 3, 2010, ABIC emailed a copy of that Western World policy to Harleysville and expressed, "[w]e know that Harleysville's policy would exclude any law enforcement liability." (ECF No. 20-1). Harleysville apparently attached significance to that statement because, on June 18, 2010, a Harleysville representative, Tammy Burkhart, emailed ABIC to inform Diamondhead that any policy issued by Harleysville would be subject to Diamondhead's separate law enforcement policy continuing to remain in effect. (ECF No. 20-1). Ms. Burkhart's email specifically stated that, "should the law enforcement policy be canceled or not renewed, [Harleysville's] policy would cease coverage as well." (ECF No. 20-1). Thereafter, Harleysville submitted its insurance proposal to Diamondhead through ABIC. That proposed policy expressly excluded law enforcement coverage.[2]

---

[1] Diamondhead and ABIC have maintained an ongoing relationship for many years related to various insurance matters. *See* Affidavit of Mike Lipton, November 5, 2012; (ECF No. 20-2).

[2] Harleysville also asserts—and Diamondhead does not dispute—that, as a matter of company policy, Harleysville does not offer law enforcement coverage in any of its policies. Specifically, Harleysville states that "such policies are available in the insurance specialty market from other carriers like Western World Insurance." *See* Affidavit of Ed Petraitis, October 1, 2012; (ECF No. 20-3).

On June 22, 2010, after reviewing several proposals presented by ABIC, Diamondhead chose the Harleysville proposal. That same day, the President of Diamondhead, Todd Belz, executed a commercial insurance application in an effort to bind the Harleysville policy. That application also expressly excluded law enforcement coverage. (ECF No. 20-1). ABIC then submitted the executed application to Harleysville and requested that it bind the Commercial Package Policy and the Commercial Liability Umbrella Policy. On July 1, 2010, Harleysville issued those policies. For reasons unknown to either party, however, the final policies issued by Harleysville somehow failed to contain the exclusion for law enforcement coverage.

Approximately fifteen days later, a member of the Diamondhead community indicated for the first time that Diamondhead understood its coverage to include law enforcement liability. This member of the Diamondhead community posted a blog on the internet apparently reporting information that was stated at a Diamondhead "town meeting." As it pertains to the subject of insurance, the blog alluded to the fact that Diamondhead's new commercial insurance policies covered its police department.[3] Shortly thereafter, the issue of law enforcement coverage became a problem.

On July 21, 2010, an incident occurred on Diamondhead's property between Defendant Ensminger, a former police officer for Diamondhead, and two Diamondhead residents, Defendants Chambliss and Nelson, which culminated in Defendant Ensminger sustaining a gunshot wound. Litigation ensued surrounding the events of that incident, which led to the present dispute over law enforcement liability coverage.

---

[3] The blog did not mention the Harleysville policies by name, but stated in relevant part: "Mr. Hannon informed the community that the DH budget for insurance for this year is $69,692. 'Todd, Tom Wright and I met with 4 different brokers. The renewal premium for came it [sic] at $49,262. This is 29% below the budgeted amount. This broker is the one we have had for over 10 years and is the only one who covers all the exposures that we have. There are very few Insurance Companies that will cover a police department.'"

On October 12, 2010, Ensminger filed suit against Chambliss and Nelson in the Circuit Court of Garland County, Arkansas to recover damages for the personal injuries he sustained from the gunshot wound (the "state court litigation"). Chambliss and Nelson then filed a counterclaim against Ensminger for their own personal injuries and property damage. Chambliss and Nelson's counterclaim implicated Diamondhead under the doctrine of *respondeat superior* because Ensminger, an employee of Diamondhead, was allegedly acting within the scope of his employment when the incident occurred.

Harleysville brought this declaratory judgment action against Defendants seeking to avoid coverage for any liability incurred by Diamondhead in the state court litigation. In its motion for partial summary judgment, Harleysville seeks reformation of the parties' insurance contract, arguing that the contract, as written, does not reflect the parties' clear intent to exclude law enforcement coverage.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir. 1995). This is a "threshold inquiry of…whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is

genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## DISCUSSION

The primary issue before the Court is whether reformation of the parties' insurance contract is proper as a matter of law. More precisely, the issue is whether the undisputed facts show that equitable relief is appropriate based on the parties' intent at the time they entered into the insurance contract.

"Reformation is an equitable remedy that is available when the parties have reached a complete agreement but, through mutual mistake, the terms of their agreement are not correctly reflected in the written instrument purporting to evidence that agreement." *Brown v. Bush*, No. CA 03-100, 2003 WL 22053045, at *3 (Ark. App. Ct. Sept. 3, 2003) (citing *Hope v. Hope*, 969 S.W.2d 324, 331 (Ark. 1998)). "A mutual mistake is one that is reciprocal and common to the parties, each alike laboring under the same misconception [with] respect to the terms of the written instrument." *Mikus v. Mikus*, 981 S.W.2d 535, 539 (Ark. App. Ct. 1998). It is a mistake shared by the parties at the time the contract is reduced to writing. *Id.*

5

In the insurance context, courts are free to grant equitable relief for a mutual mistake in the writing of the contract if the written terms fail to express the clear intent and understanding of the parties. *Id*. "The mistake of a draftsman, whether he is one of the parties or merely a scrivener, is adequate grounds for relief, provided only that the writing fails to reflect the parties' true understanding." *Kohn v. Pearson*, 670 S.W.2d 795, 797 (Ark. 1980); *see also General Agents Ins. Co. v. St. Paul Ins. Co.*, 732 S.W.2d 868, 870-71 (Ark. App. Ct. 1987) (recognizing that "[a]n insurance policy, like any other contract, which by reason of mistake in its execution does not conform to the real agreement of the parties, may be reformed in a court of equity"). For a mistake to warrant such reformation, however, it must be shown by clear and convincing evidence. *Kohn*, 670 S.W.2d at 797. In this case, Harleysville has met that burden.

Harleysville presents evidence of two representatives of ABIC that worked closely with Diamondhead, and on its behalf, to secure commercial insurance coverage. Both of these representatives expressly state by sworn affidavit that it was not Diamondhead's intent to purchase law enforcement coverage from Harleysville. ABIC made that fact known to Harleysville throughout the underwriting process and informed Harleysville that Diamondhead already had law enforcement coverage. In return, Harleysville sent emails to ABIC making it clear that any policy issued by Harleysville would have an exclusion for law enforcement coverage. In fact, every document exchanged by the parties up until the moment the final policy was issued—including the proposal for coverage presented to Diamondhead and the application for coverage executed by Diamondheads' president—expressly excluded law enforcement coverage. And it is undisputed that Diamondhead never objected to such an exclusion. This evidence indicates quite clearly the parties' intent at the time of contracting.

Indeed, Defendants' only argument that Diamondhead possessed a contrary intent to include, rather than exclude, law enforcement coverage comes in the form of hearsay evidence that arose after the parties executed the insurance contract. Defendants point to an internet blog dated July 15, 2010, written by a member of the Diamondhead community, that suggests Diamondhead may have expected to receive law enforcement coverage. The fact that this blog was written 15 days after Harleysville issued the insurance policy calls into question whether such evidence actually reveals Diamondhead's intent at the time of contracting, or instead, merely suggests the expectations of certain members of the Diamondhead community once the policy had issued. More importantly, however, this evidence is inadmissible hearsay, which cannot be considered at the summary judgment stage.

Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that "an affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See also Gannon Intern., Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "And when such an objection is made, the burden is on the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Gannon Intern., Ltd.*, 684 F.3d at 793. In this case, Harleysville objected to the admissibility of the contents of the community member's blog, and Defendants have failed to meet their corresponding burden.

The contents of the blog appear to be relaying information that was stated at a "town meeting" within the Diamondhead community. Defendants have not presented this information

7

in the form of a sworn affidavit or declaration, and they have failed to state whether the writer of the blog is competent to testify as to such matters. What is more troubling, though, is that the contents of the blog are inadmissible hearsay. Defendants have not cited an applicable exception to the rule against hearsay that would allow for the admission of the blog entry, and the Court is not aware of one. Accordingly, the contents of the community member's blog are inadmissible to show Diamondhead's intent related to law enforcement coverage. It follows, then, based on the undisputed evidence presented by Harleysville, that the parties intended to exclude law enforcement coverage, but mistakenly failed to do so in the written policy. For that reason, Harleysville's partial motion for summary judgment on the issue of reformation should be granted.

Despite the overwhelming evidence of the parties' true intent, Defendants argue that partial summary judgment is inappropriate on three alternative grounds: (1) because a fact question remains as to whether ABIC was acting as Diamondhead's agent when it negotiated and secured the insurance policies from Harleysville; (2) because under Arkansas law, the parties' insurance contract must be strictly construed in favor of the insured—in this case Diamondhead; and (3) because Western World Insurance Company is a necessary party whose interests are not adequately represented in this action. The Court will address each of these arguments in turn; however, none of them present an issue of fact that precludes summary judgment on the reformation issue.

### 1. Whether ABIC was Diamondhead's Agent

Defendants first argue that a question of fact exists as to whether ABIC was Diamondhead's agent when it facilitated the commercial insurance contract between Harleysville and Diamondhead. Defendants reason that, if the finder of fact could reasonably find that no

agency relationship existed, then ABIC's apparent understanding that law enforcement coverage would be excluded cannot be imputed to Diamondhead. This argument lacks merit.

There are two essential elements of an agency relationship: (1) that an agent has the authority to act for the principal; and (2) that the agent act on the principal's behalf and be subject to the principal's control. *Sterne, Agee & Leach, Inc. v. Way*, 270 S.W.3d 369, 375-76 (Ark. App. Ct. 2007). Both of those elements are present here. Diamondhead contacted ABIC for the specific purpose of securing commercial coverage on its behalf. At all times during the underwriting process, ABIC worked to negotiate an insurance policy, pursuant to its authority from Diamondhead, to satisfy Diamondhead's insurance needs. ABIC then acted under Diamondhead's control by specifically binding Harleysville's proposed policy at the direction of Diamondhead.

Evidence of an agency relationship is further supported by the principle that "a broker is the agent of the person who first employs him, and where he is employed to procure insurance, he is the agent of the person for whom the insurance is procured." *Dodds v. Hanover Ins. Co.*, 880 S.W.2d 311, 314 (Ark. 1994). Diamondhead was the first and only party to employ ABIC in this case, and it did so for the exact purpose of procuring insurance. Therefore, ABIC was Diamondhead's agent for purposes of the parties' insurance contract, and ABIC's understanding at the time of the contract's execution is imputed accordingly. Defendants simply cannot overcome partial summary judgment on this ground.

### 2. Whether the Insurance Contract is Ambiguous Requiring an Interpretation Favorable to the Insured

Defendants next argue that, as a matter of contract interpretation, the parties' insurance contract should be construed in a manner favorable to Diamondhead, the insured. They urge that "[i]f the language in a policy is ambiguous, or there is doubt or uncertainty as to its meaning and

it is fairly susceptible of two or more interpretations, one favorable to the insured and one favorable to the insurer, the one favorable to the insured will be adopted." *Nationwide Mutual Insurance Co. v. Worthey*, 61 S.W.2d 307, 309 (Ark. 1993). While this is a correct statement of law, it does not apply in this case.

Neither party disputes the plain language of the insurance contract. There is simply no ambiguity. The policy clearly fails to contain an exclusion for law enforcement coverage. Therefore, whether the policy *should have* contained such an exclusion is not an issue of contract construction, but instead an equitable consideration of the parties' true intent at the time of contracting. Accordingly, the rules of contract construction do not preclude summary judgment on the issue of reformation.

### 3. Whether Western World Insurance Company is a Necessary Party

Defendants' final argument opposing partial summary judgment is based on the notion that Western World is a necessary party to this action pursuant to Rule 19 of the Federal Rules of Civil Procedure. They contend that, because Diamondhead maintained a separate law enforcement policy through Western World, reformation of the contract would prejudice Western World by potentially exposing it to increased liability in the state court litigation. Defendants rely on certain language in the policy issued by Western World to Diamondhead, which states: "If the other insurance available to you was not issued by us, the insurance available under this policy shall be *excess insurance* over any other valid and collectible insurance available to the insured." (emphasis added) (ECF No. 28). In essence, Defendants propose that an "excess" insurer is a necessary party to a declaratory judgment action if the action could feasibly have some effect on the amount of coverage that excess insurer might have

to provide in a completely separate matter. This contention misstates the rule providing for necessary parties.

As an initial point, Rule 19 is a mechanism for the dismissal of a complaint when a necessary party to an action cannot feasibly be joined. The rule is not ordinarily applied as a means to preclude or postpone summary judgment as Defendants have argued here. Even so, Western World is not a necessary party to this action.

Rule 19(a)(1) requires joinder of an absent person under two circumstances: (1) if "the court cannot accord complete relief among existing parties;" or (2) if the absent person "claims an interest relating to the subject of the action and…disposing of the action in the person's absence may…impair or impede the person's ability to protect [that] interest, or leave an existing party subject to a substantial risk of…inconsistent obligations because of [that] interest."

In this case, the mere fact that Western World may be an excess insurance carrier for Diamondhead does not implicate either of those two circumstances. Western World is not a party to the contract between Diamondhead and Harleysville, and its absence from this action does not affect, one way or another, the parties' intent to exclude law enforcement coverage at the time of contracting. Simply put, Western World's absence has no impact on the equitable relief sought by Harleysville.

"As a general proposition, courts and commentators agree that additional or excess insurers are not necessary parties to a suit between an insured and its primary insurance carrier." *Travelers Indem. Co. v. Crown Cork & Seal Co., Inc.*, 865 F.Supp. 1083, 1089 (S.D.N.Y. 1994) (quoting *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 748 F.Supp. 1057, 1065 (D.Del. 1990)). Stated more broadly, "a third party is not a necessary or indispensable party to an action to determine the rights of other parties under a contract, simply because the third party's rights or

obligations under an entirely separate contract will be seriously affected by the action. *Special Jet Services, Inc. v. Federal Ins. Co.*, 83 F.R.D. 596, 599 (W.D. Pa. 1979) (citing *Allstate Ins. Co. v. Harrison*, 307 F.Supp. 743 (W.D. Ark. 1969)). This long-standing view is especially true in cases like this one where, unless and until the reformation issue is decided, it is uncertain whether the third party—in this case Western World—even has an interest at all in the dispute between the parties. Accordingly, Western World is not a necessary party in this case, and Rule 19 does not preclude summary judgment on the issue of reformation.

## CONCLUSION

For the reasons stated in this opinion, the Court finds that Plaintiff Harleysville Worchester Insurance Company's Motion for Partial Summary Judgment (ECF No. 18) should be and hereby is **GRANTED**. An order of even date, consistent with this opinion, shall issue.

**IT IS SO ORDERED**, this 31th day of January, 2013.

/s/ Susan O. Hickey
Hon. Susan O. Hickey
United States District Judge